## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| URS CORPORATION | § | |
| | § | |
| V. | § | A-15-CV-507-LY |
| | § | |
| | § | |
| TDA RESEARCH, INC. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are Defendant TDA Research, Inc.'s Motion to Transfer Venue filed on July 20, 2015 (Dkt. No. 10); Plaintiff's Response filed July 27, 2015 (Dkt. No. 13); and Defendant's Reply filed on August 3, 2015 (Dkt. No. 15). The District Court referred the above-motion to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I.  GENERAL BACKGROUND

This is a breach of contract case. Plaintiff URS Corporation identifies itself as a "corporation authorized to do business in Texas with one of its principal places of doing business located in Austin, Travis County, Texas." Dkt. No. 12 at ¶ 5. Defendant TDA Research, Inc. states that URS is a Nevada Corporation headquartered in San Francisco, California, and maintains a registered agent in Colorado. Dkt. No. 10, Ex. 6. In 2014, URS merged with AECOM Technology Corporation ("AECOM"), a Delaware company based in California. Dkt. No. 10, Ex. 4. AECOM is also registered to do business in Colorado and maintains a registered agent for service there. *Id.* TDA is a Colorado corporation with all its operations in Colorado. Dkt. No. 10, Exs. 1, 13.

On September 1, 2013, pursuant to a License and Supply Agreement ("the Agreement"), URS engaged TDA to research and develop a new catalytic technology in its laboratories in Colorado.  Dkt. No. 10, Exs. 1, 20.  TDA conducted all of the research and experiments with a Project team composed of seven TDA employees.  The worked occurred at TDA's facilities at Wheat Ridge, Colorado and Golden, Colorado.  Dkt. No. 10, Ex. 1.  TDA failed to develop the technology and URS directed TDA to stop working in December of 2014.  On March 19, 2015, TDA sent URS a demand for $108,753.67 for unpaid invoices incurred  pursuant to the parties' Agreement.  URS informed TDA that it would not pay the invoices and on May 8, 2015, filed suit in Travis County District Court, alleging that TDA breached the Agreement because the catalyst failed to perform as represented by TDA.  *Id.*

On June 12, 2015, TDA removed the case to federal court.  Dkt. No. 1.  URS filed its Amended Complaint on July 24, 2015.  Dkt. No. 12.  TDA filed its Answer and Counterclaim on August 7, 2015.  Dkt. No. 16.  TDA now moves to transfer the case to the District of Colorado pursuant to 28 U.S.C. § 1404(a).

## II.  ANALYSIS

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  District courts have "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998).  However, a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*In re Volkswagen II*").  The first step in a court's transfer analysis is deciding "whether the judicial district to which transfer is sought would have been a district in which the

2

claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I* "). If that threshold is met, as it is here, the Court then analyzes public and private factors relating to the convenience of parties and witnesses and the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009).

The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S.Ct. 568, 581 n.6 (2013); *In re Volkswagen I*, 371 F.3d at 203. The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I,* 371 F.3d at 203. Although the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314–15.

In the Fifth Circuit, the plaintiff's choice of venue has not been considered a separate factor in this analysis. *Volkswagen II*, 545 F.3d at 314-15. Rather, respecting the plaintiff's choice of venue contributes to the defendant's elevated burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315. At the end of the day, § 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart*

3

*Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

A.     **Private Factors**

   *1.     Relative Ease of Access to Sources of Proof*

   The relative ease of access to sources of proof is the first private interest factor to consider. "That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316.  TDA states that the laboratory work that was the subject of the Agreement all occurred in Colorado.  The parties agreed that all the testing and experiments would take place in Colorado.  All of the laboratory equipment and materials used in the experiments are located in Colorado.  All of TDA's employees who did the work are located in Colorado.  Additionally, all of TDA's data and records for the project are stored in files, servers, and computers located in Colorado.  Dkt. No. 10, Ex. 1. URS argues that in light of advances in copying technology and information storage, transportation of documents to this district would be relatively easy and thus this factor is effectively neutral.  If valid, this argument would apply in every case, which would render this factor superfluous, something the Fifth Circuit has rejected.  This factor thus weighs in favor of transfer to Colorado.

   *2.     The Availability of Compulsory Process to Secure the Attendance of Witnesses*

   Under Rule 45, a federal court may issue a subpoena for a witness anywhere in the United States.   FED. R. CIV. P. 45(b)(2).  This power is limited by Rule 45(c), which provides that a subpoena may command a person to attend a trial, hearing, or deposition only if the person lives, works, or transacts business within 100 miles of the courthouse, or who resides, works, or transacts business in the state where the trial is held if attending the trial would not cause the witness to incur substantial expense. FED.R.CIV.P. 45(c)(1). A court may quash a subpoena that "requires a person

to comply beyond the geographical limits specified in Rule 45(c)." FED. R. CIV. P. 45(d)(3)(A)(ii). Party witnesses do not require compulsory process, and the Court's analysis of this factor focuses on witnesses for whom compulsory process to attend trial might be necessary.  In this case, the only non-party witness located in the United States listed by either party is William Spalding, a former TDA employee who worked on the seven-member Project team attempting to develop the catalytic technology.  Spalding lives in Colorado and is subject to compulsory process there.  Accordingly, this factor weights in favor of transfer.

### 3.        The Cost of Attendance for Willing Witnesses

TDA asserts that more witnesses are located in Colorado than Texas.  It asserts that the seven individuals who worked on the TDA Project team and Mr. Karpuk have more knowledge than anyone regarding the catalyst, the tests and experiments, and what was communicated to URS regarding the same. (Dkt. No. 7, Ex. 1).  The e-mail upon which it appears URS relies for its breach of contract claim, was authored by Dr. Srinivas, a scientist at TDA who works and resides in Colorado.  *Id.*  Additionally, TDA asserts that its comptroller and bookkeeping staff have relevant knowledge regarding the amounts owed by URS.  *Id.*  TDA argues that venue in its home state of Colorado is more convenient for these key witnesses than venue in Austin, Texas; the company will not incur the expense of air travel and accommodations and the witnesses will not be called away from work and family.  TDA also asserts that URS's client is located in Alberta, Canada, and it intends to call these witnesses to testify.  TDA asserts that these non-party witnesses will be most inconvenienced by travel to Texas versus Colorado.

In response, URS has presented the Declaration of Brian Petrinec, a chemist with URS, who attached a list of URS employees that were "directly involved" in the TDA project, and are currently located in and around Austin, Texas.  Dkt. No. 13-1 at 3.  URS's list contains the names of sixteen

URS employees, their titles, and their locations, all of which are in Austin or nearby cities.  *Id.*  URS fails to identify the nature of these individuals' testimony or its relevance to the case, however.  TDA asserts that only four URS employees interacted with TDA on the Project and those employees traveled to Colorado to oversee the project for several months at a time.  Dkt. No. 10, Ex. 1.  Because, unlike TDR, URS has failed to identify the nature of the testimony or relevance of its named witnesses to its claims, the Court finds that this factor weighs in favor of transfer.

**B.    Public Factors**

*1.    Court Congestion*

The first public factor considers the relative congestion of the courts in question.  "Generally, this factor favors a district that can bring a case to trial faster." *Frito–Lay N. Am. v. Medallion Foods, Inc.*, 867 F.Supp.2d 859, 871 (E.D. Tex. 2012).  While the median time from filing to trial in the Western District of Texas is nine months faster than the median time to trial in the District of Colorado, court congestion is considered the "most speculative" factor because "case-disposition statistics may not always tell the whole story." *In re Genentech*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).  In situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors." *Id.*  Here, the statistics cited by URS are the very kind referred to in *Genentech*—they don't tell the whole story.  For example, the total case filings per judge in the Western District of Texas in 2014 were 904, making it the third busiest of the 94 districts in the country.  The Austin Division of the District is particularly busy—in 2014 the two district judges each had nearly 550 civil cases filed, along with over 200 criminal cases.  When the cases are weighted for complexity, the average weighted docket for the Austin judges in 2014 was 862 cases, more than one-and-a-half times larger than the national average weighted docket of 527 cases.  The weighted average per judge for 2014 in the District of

6

Colorado was 631 cases, more than 230 cases lower than the Austin judges' weighted dockets.[1]  In short, as between the two courts, the District of Colorado has more capacity than the Austin Division of the Western District of Texas.  This factor thus weighs in favor of transfer.

### 2. *Local Interest in the Litigation*

The second public factor considers the local interest in the litigation. "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206.  The focus of the inquiry is the relative connection of the localities to the events giving rise to this suit and their corresponding interests in the resolution of this controversy. *See Volkswagen II*, 545 F.3d at 318.  Transfer is appropriate where none of the operative facts occurred in the division and where the division had no particular local interest in the outcome of the case. *See Volkswagen II*, 545 F.3d at 318.  Courts may look to where the events occurred, where the witnesses live, where the evidence is located, and where the parties live. *Id.* However, interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests.  *Id.*

In this case TDA's headquarters and all its employees are located in Colorado.  The events giving rise to the litigation—the failure to develop a catalytic technology as allegedly promised—occurred in Colorado, and most of the evidence is in Colorado.  While some of URS's employees are located in an Austin office, those employees' testimony relates to events that took place either in Colorado or were communications with individuals in or from Colorado.  URS makes much of its claim that "one of its principal places of business" is in Austin, Texas.  But URS is incorporated under the laws of Delaware, was incorporated under the laws of Nevada, and its

---

[1]The statistics cited in the text all come from the statistical reporting contained on the United States Courts' webpage, and can be found here: http://www.uscourts.gov/statistics-reports.

headquarters is in California.  The "principal place of business" distinction has no meaning in the context of a motion to transfer venue for the convenience of the parties and witnesses.  Moreover, the evidence shows that URS has offices all over the United States and throughout the world, including several in Colorado. Dkt. No. 7, Exs. 8-12 (showing that URS is a multinational corporation with "assets in more than 150 countries around the world" and listing multiple offices in Denver, Colorado Springs, Durango and other locations in Colorado).  The Western District of Texas has little local interest in this litigation, while Colorado has a significant one.  This is a dispute between a large corporation with offices all around the United States and the world and a company that is located solely in Colorado and performed all the work that is the subject of the disputed Agreement in Colorado.  This factor weighs in favor of transfer.

### 3.     *The Familiarity of the Forum with the Law that Will Govern the Case*

The third factor, the familiarity of the forum with the law that will govern the case, weighs slightly against transfer.  This is a diversity case.  Under the Agreement's choice-of-law provision, the contractual causes of action arise under Texas common law.  "Texas district courts, naturally, will be the most familiar with Texas statutes and common law." *LED Sign Co. v. Hwee*, Civ. A. No. H–08–1463, 2008 WL 5114957, at *6 (S.D. Tex. Dec. 3, 2008) (unreported case).  But this factor "is given significantly less weight when the case involves basic or sufficiently well-established, as opposed to complex or unsettled, issues of state law or when there is no reason to believe that the applicable law of the forum differs markedly from the law of the proposed transferee state." 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3854 (2d ed. 2014); *accord*, *e.g.*, *Hawley v. Accord N. Am., Inc.*, 552 F.Supp.2d 256, 261 (D. Conn. 2008); *Elemary v. Philipp Holzmann A.G.*, 533 F.Supp.2d 144, 153–54 (D. D.C. 2008); *Frazier v. Comm. Credit Equip. Corp.*, 755 F.Supp. 163, 168 (S.D. Miss. 1991).  URS's cause of action for breach of contract does not

8

entail legally complex questions of state law and URS has not argued that Texas law on breach of contract differs markedly from Colorado law. This factor therefore weighs only slightly against transfer. *See Hawley*, 552 F.Supp.2d at 261.[2]

###   C.   Summary

Taken as a whole, the factors weigh in favor of transfer of this case to the District of Colorado. All of the private factors weigh in favor of transfer, and two of three public factors weigh in favor of transfer, with the only one weighing against transfer doing so only slightly. TDA has carried its burden and established that the District of Colorado is clearly more convenient for the parties and the witnesses than the Austin Division of the Western District of Texas.

### III.  RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendant TDA Research, Inc.'s Motion to Transfer Venue filed on July 20, 2015 (Dkt. No. 10), and **TRANSFER** this case to the United States District Court for the District of Colorado.

### IV.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and

---

[2]Neither party contends that the last public interest factor—avoidance of unnecessary problems of conflict of laws—is relevant to the analysis, and the Court need not address it.

recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 14th day of September, 2015.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE